IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KEVIN FAULKNER, et al., | ) | |
| Plaintiffs, | ) ) ) | NO. 3:19-cv-00137 |
| v. | ) ) | JUDGE RICHARDSON |
| COUNTRY INN & SUITES BY RADISSON, INC., et al. | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant Country Inn & Suites By Radisson, Inc.'s Motion for Summary Judgment. (Doc. No. 40, "Motion"). Plaintiffs Kevin Faulkner, Kellye Jo Faulkner, and Mallory Faulkner, by and through her Natural Parents and Next Friends, Kevin Faulkner and Kellye Jo Faulkner ("Plaintiffs"), filed a response in opposition to the Motion (Doc. No. 59, "Response"), and the movant (hereinafter "Country Inn") replied. (Doc. No. 61, "Reply"). For the reasons that follow, the Motion will be granted.

**BACKGROUND**[1]

This case involves events that surely all parties, whatever their disagreement about the details of what occurred, would agree was eminently avoidable. And yet, quite unfortunately, these events were not avoided. The question raised by the Motion is whether Country Inn is a party that, considering the evidence submitted in favor of and in opposition to the Motion, can be held liable for whatever happened.

---

[1] The following facts, unless somehow qualified herein (as for example by "[deponent] testified that . . ."), are taken as true for purposes of this motion, because they are either: (1) asserted and evidentially supported by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; or (3) asserted and evidentially supported by the non-movant and thus credited by this Court even if disputed by the movant.

1

Defendant Country Inn is a well-known licensor of quality guest lodging systems. (Doc. No. 65 at ¶ 4). The Country Inn trademarks have been used continuously by Country Inn, and those licensed by Country Inn, in connection with the provision of quality guest lodging services associated with the Country Inn trademarks. (*Id*. at ¶ 5). There are more than 400 Country Inn guest lodging facilities located in the United States and internationally. (*Id*. at ¶ 8). Each Country Inn hotel exists and operates either under direct management by an affiliate of Country Inn or under a franchise or license agreement. (*Id*. at ¶ 6). As the licensor, Country Inn enters into license agreements with individual licensees by which those licensees are permitted to display the Country Inn trademarks in connection with the operation of their individually owned and operated Country Inn hotels. (*Id*. at ¶ 9).

Country Inn entered into a licensing agreement ("License Agreement")[2] with Defendant Montgomery Hospitality Partnership ("Montgomery")[3] in relation to a hotel business ("The Hotel") located at 3075 Wilma Rudolph Boulevard, Clarksville, Tennessee. (Doc. No. 41-1 at 4).

On March 29, 2018, Plaintiffs Keven Faulkner, Kellye Jo Faulkner and their daughter Mallory Faulkner arrived at the Hotel for a two-night stay in conjunction with their son's college baseball tournament at nearby Austin Peay State University. (Doc. No. 66 at ¶ 1). Kevin Faulkner averred in his declaration that he booked a room at the Hotel because of the marketing and advertising of Country Inn as a safe and family-friendly hotel. (Doc. No. 69-1 at ¶ 5). In his deposition, he testified that he "stayed there because of [sic] the baseball team was staying there." (Doc. No. 66-1 at 3).

---

[2] The License Agreement is attached to the declaration filed at Docket No. 41-1; it begins at page 4 of Docket No. 41-1.

[3] Although the observation is not material to the instant Motion, the Court notes that Montgomery's Corporate Disclosure Statement (Doc. No. 13) indicates from a checked box that it is a "limited liability partnership" but otherwise suggests that it may instead be a general partnership, especially given the omission of anything like "LLP" in the name given for the partnership.

2

Upon arrival to the Hotel, Kellye Jo Faulkner discovered that there was an error in the room type assigned to Plaintiffs. (Doc. No. 66 at ¶ 9). Kevin Faulkner brought the error to the attention of the Hotel representative at the front desk, Defendant Jazmine Carter. (*Id.* at ¶ 10). According to Plaintiffs, Jazmine Carter was rude and confrontational, and Kevin Faulkner insisted upon speaking with Jazmine Carter's supervisor. (*Id.* at ¶ 11). In response to the confrontation, Jazmine Carter telephoned her boyfriend, Rico Deshawn Mallory, as well as the Clarksville Police Department. (*Id.* at ¶ 12). Two police officers arrived at the Hotel, took the Plaintiffs statements, and suggested that Plaintiffs check into another nearby hotel. (*Id.* at ¶ 13). Plaintiffs followed the officers' advice and left the Hotel to secure a room at the Home 2 Suites by Hilton across the parking lot. (*Id.* at ¶ 14).

Upon arriving at the Home 2 Suites, Kellye Jo Faulkner realized that she had left her cellphone at the front desk of the Hotel. (*Id.* at ¶ 15). Kevin Faulkner called the Hotel and confirmed that the cellphone was left on the front desk counter. (*Id.* at ¶ 16). Kevin Faulkner decided to not return to the Hotel to retrieve the cellphone in order to avoid any further contact with Jazmine Carter. (*Id.* at ¶ 17). Instead, Kellye Jo and Mallory Faulkner returned to the Hotel to retrieve the cellphone. (*Id.*).

A short time later, a frantic Mallory Faulkner called Kevin Faulkner and informed him that a man was threatening her and Kellye Jo Faulkner in the parking lot of the Hotel. (*Id.* at ¶ 18). Kevin Faulkner immediately walked across the street to the Hotel as he called 911 and reported an emergency. (*Id.* at ¶ 19). When Kevin Faulkner arrived in the parking lot of the Hotel, Jazmine Carter and Rico Deshawn Mallory (Jazmine's boyfriend and the man that had been threatening Kellye Jo and Mallory Faulkner) pulled up beside Kevin Faulkner in a silver Chevrolet Impala. (*Id.* at ¶ 20). Rico Deshawn Mallory then jumped out of the vehicle and starting physically

assaulting Kevin Faulkner. (*Id*. at ¶ 20). Jazmine Carter encouraged Rico Deshawn Mallory ("Beat his ass! Beat his ass!") and eventually joined in the physical assault. (*Id*. at ¶ 22). Kevin Faulkner suffered contusions and abrasions and a fractured left scapheoid from the assault. (*Id*. at ¶ 23). Due to his injuries sustained that day, Kevin Faulkner has undergone four separate surgical procedures, and has incurred medical expenses well in excess of $200,000. (*Id*. at ¶ 24).

On February 11, 2019, Plaintiffs filed their Complaint in this Court against Defendants Jazmine Carter, Rico Deshawn Mallory, Tasha Echevarria,[4] 3075 Wilma Rudolph Boulevard Country Inn & Suites,[5] Montgomery, Montgomery Hospitality, LLC,[6] John Does 1 through 20, and Country Inn. (Doc. No. 1). Plaintiffs assert state-law claims of battery (Count I), assault (Count II), and intentional infliction of emotional distress (Count III) against all Defendants. The Complaint alleges that: (a) Jazmine Carter and Rico Deshawn Mallory are directly liable on these counts; and (b) Defendants 3075 Wilma Rudolph Boulevard Country Inn & Suites, Montgomery, Montgomery Hospitality, LLC, John Does 1 through 10, and Country Inn are vicariously liable on these counts for the actions of Jazmine Carter under the doctrine of *respondeat superior*.

---

[4] Echevarria is identified in the Complaint as a supervisor at the Hotel. (Doc. No. 1 at ¶ 7).

[5] Although "3075 Wilma Rudolph Boulevard Country Inn & Suites" is listed in the case caption as a defendant, this (purported) Defendant is not mentioned in any of the paragraphs of the Complaint (Doc. No. 1) or the initial case management order (Doc. No. 25). It does not appear to the Court to be a suable entity in any event. Thus, going forward, the Court will not treat 3075 Wilma Rudolph Boulevard Country Inn & Suites as a defendant in this matter.

[6] It is unclear from the record how Montgomery Hospitality, LLC is *currently* (or ever was, for that matter) affiliated with Montgomery Hospitality Partnership. The Complaint indicates that Montgomery Hospitality, LLC is a Tennessee limited liability company conducting business as the 3075 Wilma Rudolph Boulevard Country Inn & Suites (the Hotel). (Doc. No. 1 at ¶ 9). However, the License Agreement is between Montgomery (Hospitality Partnership) and Country Inn, and both parties in their briefing refer to Montgomery Hospitality Partnership as the owner of the Hotel. Additionally, Montgomery Hospitality, LLC's Corporate Disclosure Statement (Doc. No. 14) indicates that this entity was administratively dissolved in August 2005 and Montgomery Hospitality, LLC is now a defunct business. Because Montgomery Hospitality Partnership and Montgomery Hospitality, LLC are not parties to the current Motion, the Court need not necessarily delve into the specifics of the relationship. The Court notes this only to indicate that the record at this time is not completely clear as to how or what Plaintiffs may recover from Montgomery Hospitality, LLC or how Montgomery Hospitality, LLC has anything to do with the events implicated by the Complaint.

Count IV alleges Defendants Tasha Echevarria and John Does 1 through 20 were negligent because they failed to properly hire, screen, supervise, manage, oversee, train, and discipline Defendant Jazmine Carter. (*Id.* at ¶ 60). The Complaint alleges that Defendants 3075 Wilma Rudolph Boulevard Country Inn & Suites, Montgomery, Montgomery Hospitality, LLC, John Does 1 through 10, and Country Inn (collectively, "Count IV Defendants") are vicariously liable for the negligence of Tasha Echevarria and John Does 1 through 20 under the doctrine of *respondeat superior* because those (21) individual Defendants were acting as agents, servants, employees and representatives of the Count IV Defendants. (*Id.* at ¶ 61).

Count V alleges that Defendants 3075 Wilma Rudolph Boulevard Country Inn & Suites, Montgomery, Montgomery Hospitality, LLC, John Does 1 through 10, and Country Inn were negligent because they failed to properly hire, screen, supervise, manage, oversee, train, and discipline Defendant Jazmine Carter. (*Id.* at ¶ 66).

On August 20, 2020, Defendant Country Inn filed its Motion for Summary Judgment seeking summary judgment on all claims asserted against it. Plaintiffs filed a response (Doc. No. 59) and Country Inn in turn filed a reply (Doc. No. 61). Thus, this matter is ripe for adjudication.

### LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248.

On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving

6

party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## ANALYSIS

As described above, Plaintiffs allege in Counts I through IV that Country Inn is vicariously liable to Plaintiffs under the doctrine of *respondeat superior*. Count V alleges that Country Inn is directly liable to Plaintiffs for its own negligence. Whether either theory (vicarious liability or direct liability) survives summary judgment will be explored in turn.

### I. Vicarious Liability (Counts I-IV)

Country Inn argues that it cannot be vicariously liable for the actions of Jazmine Carter, Tasha Echevarria, and John Does 1 through 20 because they were employees of Montgomery, and not employees of Country Inn, and Country Inn was merely a franchisor of the Hotel that was owned and operated by Montgomery.

i. The Parties' Positions

In the Memorandum of Law filed in support of its Motion, Country Inn asserts that "[t]he predominant test for holding a franchisor liable for the tortious conduct of its franchisee is whether the franchisor 'control[s] or has the right to control the daily conduct or operation of the particular 'instrumentality' or aspect of the franchisee's business that is alleged to have cause the harm.'" (Doc. No. 41 at 8 (quoting *Gray v. McDonald's USA, LLC*, 874 F. Supp. 2d 743, 742 (W.D. Tenn. 2012))). In *Gray*, the plaintiff (an employee of McDonald's franchisee) alleged that McDonald's was liable after he was allegedly assaulted by a supervisor. *Gray*, 874 F. Supp. at 745. The court analyzed McDonald's liability as a franchisor and found that under the common law agency test, the franchisee was not the actual agent of McDonald's because there was no evidence to indicate that McDonald's hired the franchisee's employees or had the right to hire, supervise, or set the

7

employees' work schedule. *Id*. at 751. Country Inn asserts that the result under Tennessee law would be the same. (Doc. No. 41 at 8).[7]

Country Inn argues that like the franchisor in *Gray*, it did not have day-to-day control over operations of Montgomery. In so arguing, Country Inn points to the declaration of its Vice President of Operations Support, which explains that Country Inn did not employ any of the staff at the Hotel, was not responsible for employee supervision, setting the conditions of employment, or employee discipline or discharge. (*Id*. at 3 (citing Doc. No. 41-1 at ¶¶ 23-28)). Country Inn also points to Article 17.3 of the License Agreement, which explains that Montgomery, not Country Inn, was responsible for determining "the manner and means by which the day-to-day Operation of the Hotel is conducted and for achieving [its] business objectives . . . [Montgomery was] responsible for the employment, supervision, setting the conditions of employment, discipline and discharge for [its] employees, and daily maintenance, safety, security and the achievement of compliance with the System."[8] (*Id*. at 4-5 (citing Doc. No. 41-1 at Art. 17.3)).

Thus, Country Inn has met its initial burden on its summary judgment motion to point to evidence in the record demonstrating the absence of a genuine issue of material fact as to whether it is vicariously liable to Plaintiffs. Country Inn has pointed to evidence tending to demonstrate that it did not have control over the day-to-day activities of the Hotel and therefore cannot be vicariously liable (through *respondeat superior*) for the actions of the Hotel employees on a theory

---

[7] Both parties are seemingly in agreement that Tennessee law applies to Plaintiffs' claims brought pursuant to state law, as both parties cite and rely upon Tennessee case law.

[8] The License Agreement defines "System" as "The Marks, the Confidential and Proprietary System Information, and other distinctive elements developed and owned by, or provided by our Affiliates to, [Country Inn], and the methods provided to [Country Inn] for the Construction and Operation of System Hotels and other hotels authorized to use the System, and all good will." (Doc. No. 41-1 at 8).

of actual agency[9]—and thus is entitled to judgment on Counts I-IV as a matter of law. *See Allen v. Greenville Hotel Partners, Inc.*, 409 F. Supp. 2d 672, 679 (D.S.C. 2006), *aff'd*, 276 F. App'x 339 (4th Cir. 2008) (examining South Carolina law and holding that "[the franchisor] did not control the hotel's daily operations or hotel security and life safety systems. Through the Agreement and the Rules and Regulations, [the franchisor] merely maintained 'uniform service within, and public goodwill toward, the [franchisor's] system.'. . . As such, [the franchisor] cannot be liable under these facts on a theory of actual agency"). Because Country Inn has met its initial burden as the summary judgment movant, the burden shifts to Plaintiffs to set forth specific facts showing that there is a genuine issue of material fact for trial on the issue of Country Inn's vicarious liability. *Pittman*, 901 F.3d at 628.

In their Response, Plaintiffs do not respond to Country Inn's argument regarding lack of an *actual* agency relationship. Rather, Plaintiffs raise a theory of vicarious liability different from the vicarious-liability theory (*respondeat superior*) asserted in their complaint: *apparent* agency.[10] In asserting that they avoid summary judgment based on a theory of apparent agency, Plaintiffs primarily rely on two cases: *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156 (4th Cir. 1988) and *Wood v. Holiday Inns, Inc.*, 508 F.2d 167 (5th Cir. 1975).

---

[9] "When an agency relationship exists, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency." *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 343 (Tenn. 2002) (citation omitted). "In Tennessee, the doctrine of *respondeat superior* permits the master/principal to be held liable for the negligent actions of his servant/agent." *Id*. (citing *Smith v. Henson*, 381 S.W.2d 892, 897 (1964)).

[10] Plaintiffs' entire legal argument in their Response involves reliance on cases involving an apparent agency theory. (*See* Doc. No. 59 at 11-15). Although Plaintiffs' discuss the day-to-day "control" they indicate Country Inn presumably exercised over Montgomery, Plaintiffs do not cite to any case law, nor make a specific legal argument, that this alleged control created an actual agency relationship. Plaintiffs point to *numerous* contractual provisions, but merely being a counterparty on a contract does not generally make one an agent or a principal to the other contracting party. Plaintiff fails to explain why Montgomery is an agent of, rather than contractual counterparty to, Country Inn.

9

In *Crickey*, on appeal from a jury verdict, the court held that the evidence at trial supported a finding of apparent authority because "[b]y the virtue of the franchise agreement, Holiday Inns retained a significant degree of control over the operation of the Holiday Inn-Concord. This control included the use of the Holiday Inns trade name and trademarks, which appeared on numerous items in and around the motel." 844 F.2d at 166. The court explained that "[w]e think the jury could reasonably conclude that the Holiday Inn-Concord was operated in such a way as to create the appearance that it was owned by Holiday Inn, Inc. and that this was one of the purposes of the franchise agreement." *Id*. at 167.

In *Wood*, the court reversed a district court's grant of a directed verdict to a franchisor and held that there was "sufficient evidence from which a jury could reasonably conclude that Holiday Inns, Inc. [(the franchisor)] should be liable for [the franchisee's] actions." *Wood*, 508 F.2d at 175. the court examined a Holiday Inn license agreement and found

> There is considerable evidence in the record indicating a high degree of control over Interstate [(the franchisee)] by Holiday Inns, Inc. The license agreement between the two parties required [licensee] to build and maintain the facility as specified by the parent company, and to observe strictly the 'Rules of Operation' as promulgated by the Holiday Inns, Inc., board of directors. [Licensee] was also required to permit regular inspection of the Phenix City facility by Holiday Inn inspectors in order to insure compliance with the Rules of Operation. The agreement further provided that any substantial violation of its terms would give Holiday Inns, Inc., the right to cancel Interstate's license. It was implicit in the agreement that [licensee] as a corporate entity would not maintain the Phenix City Inn, but would hire servants for this purpose. We believe that this was sufficient evidence from which a jury could reasonably conclude that Holiday Inns, Inc., should be liable for [the employee's] actions. However, we do not base our holding on the degree of control that Holiday Inns, Inc., maintained over [the employee]. Rather we believe that [plaintiff] presented more than insubstantial evidence as to the liability of Holiday Inns, Inc., on a theory of apparent authority.

*Id.* at 175-76. The court explained that the evidence of apparent authority was "[t]he license agreement between Holiday Inns, Inc., and Interstate provided that the Phenix City facility should be constructed and operated so that it would be 'readily recognizable by the public as part of the

10

national system of 'Holiday Inns.'" *Id*. at 176. Additionally, the court noted that "the Phenix City facility was required to use the same service marks and trademarks, and exterior and interior decor as the Holiday Inns owned by the parent company [*i.e.*, Holiday Inns, Inc.]." *Id*. Thus, the court held that "[a] jury could therefore reasonably conclude that the license agreement required the Phenix City facility to be of such an appearance that travelers would believe it was owned by Holiday Inns, Inc." *Id*.

Plaintiffs assert that the License Agreement at issue here evidences the same level of control as existed in the franchise agreements at issue in *Wood* and *Crickey*. Plaintiffs argue that the License Agreement demonstrates that Country Inn "controls the training, the specifications for the hiring of managers, schedule of managers, clothing and apparel of employees, and all signage at the Hotel. In this case, liability lies with every level of management, from Country's lack of proper training and enforcement of policies and mandates to Montgomery's failure to enforce Country's policies and mandates—including the express directive that a manager be on the premises to defuse situations and avoid potential conflict with Country Inn & Suites guests." (Doc. No. 59 at 13).

In its Reply, Country Inn argues that both cases Plaintiffs rely upon (*Crickey* and *Wood*) "are not supported by Tennessee law and are contrary to prevailing authorities on agency liability." (Doc. No. 61 at 4). Country Inn points out that under Tennessee law, "[a]pparent authority is established *through the acts of the principal* rather than those of the agent or through the perception of a third party." (*Id*. at 5 (quoting *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432-433 (Tenn. 2008) (emphasis added)). Country Inn argues that "Plaintiffs have cited no facts suggesting that Country acquiesced in any purported exercise of authority by Montgomery on Country's behalf, or that Country held out Montgomery as its agent. In fact, Country required Montgomery to display

11

a sign at the front desk indicating to its guests, employees, and other third parties that the Hotel is independently owned and operated by Montgomery as a licensed business." (*Id*.). Thus, Country Inn contends that because "Plaintiffs have failed to cite to any fact in the record suggesting that Country actually or negligently acquiesced in any exercise of authority by Montgomery on Country's behalf that led to Mr. Faulkner's injuries. . . . there is no genuine issue of fact and Country cannot be liable under an apparent authority theory." (*Id*. at 7).

    ii. Analysis

"Apparent agency is essentially agency by estoppel; its creation and existence depend upon such conduct by the apparent principal as will preclude him from denying another's agency."[11] *Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414, 421–22 (Tenn. Ct. App. 2004) (quoting *Mechs. Laundry Serv. v. Auto Glass Co.*, 98 S.W.3d 151, 157 (Tenn. Ct. App. 2002)). Under Tennessee law, to demonstrate apparent agency a party must show that "(1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment." *Id*. (quoting *Mechs. Laundry*, 98 S.W.3d at 157).

The Court agrees with Country Inn that Plaintiffs have not proffered any evidence that could lead a reasonable jury to conclude that Montgomery is the apparent agent of Country Inn under Tennessee law. Plaintiffs first point to various sections of the License Agreement that Plaintiffs argue demonstrates Country Inn's control over operations at the Hotel. The problem with this argument is that under Tennessee law, the third person clearly *must have knowledge* of the

---

[11] The terms apparent agency and apparent authority are used interchangeably throughout this Memorandum Opinion. Unlike some courts, Tennessee courts do not make a distinction between the concepts of apparent agency and apparent authority. *See Boren ex rel. Boren*, 251 S.W.3d at 432.

12

facts (that supposedly create the apparent agency relationship) and a good-faith belief that the apparent agent possessed such authority. *See Danny L. Davis Contractors, Inc.*, 157 S.W.3d at 421–22. There are no facts in the record that reveal that Plaintiffs reviewed the License Agreement prior to their decision to stay at the Hotel, or that Plaintiffs were even aware of the License Agreement's existence prior to booking their stay at the Hotel. Thus, Plaintiffs may not rely on the License Agreement to demonstrate an apparent agency relationship.

The Court recognizes that the courts in *Woods* and *Crickey* reviewed the language of similar licensing agreements when holding that a reasonable jury could conclude that an apparent agency relationship existed. However, these cases do not rely on Tennessee law, which plainly requires that the third-party *have knowledge of and rely* on such facts that create an apparent agency relationship. *See Boren ex rel. Boren*, 251 S.W.3d at 432. While the sections of the License Agreement would be relevant to any argument that Montgomery is the *actual* agent of Country Inn, Plaintiffs do not make such an argument, relying instead in their Response exclusively on the theory of apparent agency.

Plaintiffs also point to the declaration of Kevin Faulkner, wherein he avers that he booked his families' stay with Country Inn as a direct product of the marketing and advertising of the hotel chain as safe and family-friendly. (Doc. No. 59-1 at ¶¶ 3-8). He also averred that he had never heard of Montgomery, knew nothing of its reputation or standards, and would not have booked his family's stay at a "no-name" hotel like the Hotel and instead booked his family's stay at the Clarksville Country Inn & Suites because it was a Country Inn & Suites by Radisson. (*Id.* at ¶¶ 6-7). Plaintiffs additionally point to the deposition testimony of Kevin Faulkner, who testified that he researched Country Inn on the internet prior to booking his stay. (Doc. No. 59-2 at 113:15-114:5).

13

None of this evidence, however, demonstrates that Country Inn held out Montgomery as its agent. The Court finds that these facts instead demonstrate merely a franchisee-franchisor relationship among the parties. Another judge in this district, reviewing whether apparent agency existed under Tennessee law, recently rejected a similar argument:

> Willock . . . argues that the other defendants' actions should be attributed to Hilton Domestic for jurisdictional purposes because they were its apparent agents. . . .
>
> Willock argues that, by allowing the hotel to operate under a Hilton brand and be booked through the Hilton Honors website, Hilton Domestic held the other defendants out as its agents. Willock's argument, however, would effectively transform every franchisor-franchisee relationship into an agency relationship. That, though, is not how franchising works. A franchise agreement is merely a type of trademark licensing arrangement that allows the franchisee to do business under the franchisor's brand as long as the franchisor retains some limited amount of quality control. *See F.D.I.C. v. Homestead Mortg. Co.*, No. 04-74842, 2010 WL 5420279, at *11 (E.D. Mich. Dec. 27, 2010) (explaining franchising). While "the existence of a franchisor-franchisee relationship between persons does not in itself preclude the existence of a principal-agent relationship between them," neither does it mandate any such connection. *Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011) (quoting *Coleman v. Chen*, 712 F. Supp. 117, 124 n.6 (S.D. Ohio 1988)) (emphasis added). The mere existence of a franchise relationship is insufficient to establish actual or apparent agency; the test for either must be met with additional facts. *See, e.g., Viches v. MLT, Inc.*, 127 F. Supp. 2d 828, 832 (E.D. Mich. 2000) (holding that hotel franchisee was not apparent agent of franchisor); *Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 89 (E.D.N.Y. 2000) (collecting franchisor liability cases).

*Willock v. Hilton Domestic Operating Co., Inc.*, 474 F. Supp. 3d 938, 951 (M.D. Tenn. 2020) (J. Trauger). The Court agrees with the persuasive reasoning of Judge Trauger. The facts Plaintiffs point to (an internet website and (presumably) Kevin Faulkner's confusion over ownership due to use of the franchisor's trademarks) are facts that exist in nearly every franchisor-franchisee relationship. To hold a franchisor liable on an apparent agency theory based on these facts would, as Judge Trauger aptly states, "effectively transform every franchisor-franchisee relationship into an agency relationship." *Id.*; *see also Rothstein v. Auto Club S.*, No. 115CV09391LAKSDA, 2019

14

WL 5722215, at *11 (S.D.N.Y. Aug. 26, 2019), *aff'd*, 831 F. App'x 589 (2d Cir. 2020) (reviewing New York law and explaining that the use of a franchisor's logos and trademarks so not establish apparent authority); *Braucher ex rel. Braucher v. Swagat Grp., L.L.C.*, 702 F. Supp. 2d 1032, 1045 (C.D. Ill. 2010) (analyzing Illinois law and noting "The use of the brand name shows a franchise relationship, but the existence of a franchise does not create an agency"); *Raines v. Shoney's Inc.*, 909 F. Supp. 1070, 1078 (E.D. Tenn. 1995) (reviewing Tennessee law and noting that "[t]he protection of its trademark and service mark is a necessary duty of a franchisor; to interfere with this duty would unfairly impose liability on the basis of a necessary duty").

Kevin Faulkner averred in his declaration that he booked a room at the Hotel "because it was a Country Inn & Suites by Radisson," (Doc. No. 59-1 at ¶ 8), thus suggesting he believed that the Hotel was what is generally known as "company-owned," *i.e.*, that Country Inn owned and operated the Hotel. But the Court cannot say that a reasonable jury could conclude that this belief was "reasonable" or "in good faith." As the Seventh Circuit pointed out, "Almost everyone knows that chain outlets, whether restaurants, motels, hotels, resorts, or gas stations, are very often franchised rather than owned by the owner of the trademark that gives the chain its common identity in the marketplace." *Carris v. Marriott Intern., Inc.*, 466 F.3d 558, 562 (7th Cir. 2006); *see also Mobil Oil Corp. v. Bransford*, 648 So.2d 119, 120 (Fla. 1995) (finding no apparent agency and explaining that "[i]n today's world, it is well understood that the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment decisions."). The Court agrees that the fact that *many* hotels are franchised (and not owned and operated by the franchisor, *i.e.,* company-owned) is common knowledge; thus, Plaintiffs can hardly argue that they

15

had "a good faith belief" that Country Inn was the owner/operator of the Hotel. At best, Plaintiffs indulged in unsupported (and imprudent) speculation to this effect.

Moreover, Plaintiffs fail to demonstrate how the conclusion that Montgomery was the apparent agent of Country Inn would lead to the result that Country Inn is liable for the actions of Jazmine Carter, Tasha Echevarria, and John Does 1 through 20. As noted above, because Country Inn met its initial burden on summary judgment to demonstrate the absence of a genuine dispute of material fact, the burden shifted to Plaintiffs to demonstrate a genuine dispute of material fact as to Country Inn's vicarious liability. Plaintiffs have completely failed to explain why—even if Montgomery were properly considered the apparent agent of Country Inn—Country Inn is liable for the actions of *employees* of Montgomery (*i.e.*, most of the various individual Defendants). If applicable, the apparent-agency theory would render Country Inn liable for torts of Montgomery, but Plaintiff would still need to explain why a reasonable jury could conclude that the torts of these individuals are the torts of Montgomery. Perhaps a jury could so conclude, but Plaintiff has done nothing to show that this. And it is their burden at this stage to do so.

Accordingly, Country Inn has shown based on undisputed facts that a reasonable jury could not find Country Inn vicariously liable to Plaintiffs for the actions of Jazmine Carter, Tasha Echevarria, and John Does 1 through 20 and Plaintiffs have failed to rebut that showing. Thus, summary judgment will be granted on Counts I through IV asserted against Country Inn on a theory of vicarious liability.

**II. Direct Liability (Count V)**

In Count V of the Complaint, Plaintiffs assert a negligence claim against Country Inn, alleging that "the actions of . . . Country Inn [] constitute negligence in that [it] failed to properly hire, screen, supervise, manage, oversee, train, and discipline Defendant Jazmine Carter and other

16

employees." (Doc. No. 1 at ¶ 66). In order to establish a negligence claim under Tennessee law, Plaintiffs must prove five elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation. *Merhson v. HPT TA Props. Tr.*, No. M2018-00315-COA-R3-CV, 2018 WL 5793564, at *2 (Tenn. Ct. App. Nov. 5, 2018) (quoting *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

Country Inn argues that based on undisputed material facts, Country Inn cannot be liable to Plaintiffs on a direct negligence theory because Jazmine is not an employee of Country Inn. (Doc. No. 41 at 9-11). The undisputed facts in the record reveal that Jazmine Carter is an employee of Montgomery, not Country Inn. (Doc. No. 41-1 at ¶ 25). "As a general proposition, a franchisor is not the employer of employees of the franchisee." *Raines*, 909 F. Supp. at 1078. In 2015, the Tennessee legislature passed a statute stating that under Tennessee law, an employee of a franchisee is not an employee of a franchisor "for any purpose." Tenn. Code. Ann. § 50-1-208 ("Notwithstanding any voluntary agreement entered into between the United States department of labor and a franchisee, neither a franchisee nor a franchisee's employee shall be deemed to be an employee of the franchisor for any purpose."). Thus, because Jazmine Carter is not an employee of Country Inn, it cannot be liable for any alleged failure "to properly hire, screen, supervise, manage, oversee, train, and discipline Defendant Jazmine Carter." (Doc. No. 1 at ¶ 66).[12]

Therefore, the burden switches to Plaintiffs to demonstrate the existence of a genuine issue of material fact. In their Response, Plaintiffs do not point to any evidence or provide any argument as to whether Country Inn is directly liable to Plaintiffs on a negligence theory, as their argument

---

[12] Country Inn also argues that it is not directly liable to Plaintiffs because Plaintiffs cannot identify a duty owed to Plaintiffs by Country Inn. Finding that Country Inn is clearly entitled to summary judgment on Count V for other reasons, the Court need not reach this issue.

in the Response addresses only Plaintiffs' vicarious liability theory of apparent agency. (Doc. No. 59). Plaintiffs simply fail to cite any legal authority supporting the premise that a franchisor is directly liable to a third-party for conduct of the franchisee's employee. Thus, Plaintiffs have not met their burden to demonstrate a genuine issue of material fact on the issue of Country Inn's direct liability. Relatedly and alternatively, summary judgment on Count V can be granted for Country Inn on the basis of abandonment alone, given Plaintiffs' failure to respond to the argument.[13]

Accordingly, summary judgment on Count V as to Country Inn will be granted.

## CONCLUSION

If the allegations of the Complaint are true with respect to the events of March 29, 2018, one can see how Plaintiffs would have a valid claim against multiple parties. The question on the Motion, however, is whether Country Inn has demonstrated that, based on facts as to which there is no genuine issue, it is not such a party. Once Country Inn properly supported its Motion as the summary judgment movant, it was incumbent upon Plaintiffs to meet their resulting burden, and Plaintiffs failed to do so (and in some respects did not even try to do so). For the above-stated reasons, Country Inn's Motion for Summary Judgment on all counts will be GRANTED and Defendant Country Inn will be dismissed from this action.

---

[13] *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."); *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim).

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

19